# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER L. GILES, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:20-cv-00723-JHE |
| ALABAMA GOODWILL INDUSTRIES, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

On November 17, 2020, Defendant Alabama Goodwill Industries ("Goodwill") moved to dismiss the amended complaint in this employment discrimination action, (doc. 21). (Doc. 23). Plaintiff Christopher L. Giles ("Giles") has filed a response in opposition, (doc. 25), and Goodwill has filed a reply, (doc. 26).[2] For the reasons stated more fully below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.[3]

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

[2] Goodwill's reply is simply a carbon copy of portions of its motion to dismiss. As such, the undersigned references only the motion to dismiss.

[3] Because this memorandum opinion fully disposes of the motion to dismiss, Defendant's motion for hearing, (doc. 30), is **DENIED**.

A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557). Further, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "[A] plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.

## II. Background

### A. Factual Background

Giles, a black man over sixty years old, worked for Goodwill, a nonprofit organization, from November 16, 2015, until December 2, 2019. (Doc. 21 at ¶¶ 7, 15, 39). He was originally hired as a Child Placement Specialist working with special needs children. (*Id.* at ¶ 8). In June 2019, Giles was promoted to Director of Mission Services. (*Id.* at ¶ 9). His responsibilities in that role included developing programs and attending functions to promote Goodwill, which relies extensively on donations. (*Id.* at ¶¶ 11, 15).

Giles' supervisor was Angela Preston ("Preston"), a young black woman. (*Id.* at ¶ 22). Although Giles had some disagreements with Preston, Giles was promoted and given a raise. (*Id.*). However, Preston treated Giles negatively. (*Id.* at ¶ 30). Preston would not allow Giles to speak in meetings with younger individuals and made false allegations to management concerning Giles. (*Id.* at ¶ 31). Preston made several references to Giles' speed, attributing his slowness to his age. (*Id.* at ¶ 32). Preston sided with female employees and third parties who worked with Goodwill over Giles. (*Id.* at ¶ 41-42). This culminated in Giles receiving a negative evaluation, later changed by Preston. (*Id.* at ¶ 43).

In October 2019, Goodwill hired Amanda Ford ("Ford"), a young white woman, who replaced Preston as Giles' supervisor. (*Id.* at ¶ 14). Ford also supervised Sam Holmes ("Holmes," a younger white man), and Jonise Gates ("Gates," a black woman). (*Id.* at ¶¶ 10, 15). Shortly

3

after Ford took over, Gates was terminated.  (*Id.* at ¶ 18).  Holmes' performance was inadequate, including language violations, falling asleep on the job, and leaving a child at the agency.  (*Id.* at ¶¶ 23-24).  However, Holmes was not disciplined, either by Preston or Ford.  (*Id.* at ¶ 24-25).

Ford began to assign Giles projects and tasks that interfered with his other responsibilities.  (*Id.* at ¶ 17-21).  Ford constantly questioned Giles regarding his ability to perform his job.  (*Id.* at ¶¶ 34-36).  Holmes worked with Giles on one project, but his failures regarding the project were not addressed by management, and Ford never questioned Holmes' ability to perform his job even though Holmes did not complete projects assigned to him.  (*Id.* at ¶ 28, 37).  Giles never witnessed any derogatory behavior by Ford towards women.  (*Id.* at ¶ 47).

On the date before Giles' termination, there was a "heated discussion" regarding a project.  (*Id.* at ¶ 48).  Giles went to Holmes' office to talk with him.  (*Id.*).  Ford saw Giles at Holmes' office, approached Giles, and escalated the previous discussion.  (*Id.* at ¶ 49).  Following that discussion, Ford terminated Giles.  (*Id.* at ¶ 50).

### B. Procedural History

Giles, initially proceeding *pro se*, filed his complaint on May 21, 2020. (Doc. 1).  Goodwill responded with a motion to dismiss.  (Doc. 9).  Giles then retained counsel and filed an amended complaint, (doc. 21).  Goodwill responded by refiling, nearly verbatim, its motion to dismiss.  (Doc. 23).

### III. Discussion

Giles' amended complaint alleges discrimination based on age, race, and sex. (*See* doc. 21). Goodwill's motion to dismiss attacks the amended complaint on two essential grounds: falsity and lack of specificity.[4] (*See* doc. 23).

Goodwill states that the amended complaint "is false on its face. To wit: Plaintiff was in a protected class when he was hired and was terminated for just cause by a minority female after working under a minority female supervisor, who also noted his on-going troublesome, disruptive, and abusive behavior." (Doc. 23 at 3). Goodwill cannot secure dismissal by its counsel's assertions that the court should believe its explanation for its actions over Giles' explanation, because the court *cannot* do that.[5] Whether the allegations in the complaint are accurate or not, as stated above, the court accepts all factual allegations as true in reviewing a Rule 12(b)(6) motion to dismiss. *See Grossman*, 225 F.3d at 123. Neither the complaint's allegedly false explanation for Giles' firing nor counsel's stated justification for the firing provide a basis to dismiss the complaint under Rule 12(b)(6).

For the most part, Goodwill's motion also fails as to the complaint's specificity.[6] As to age discrimination, the Age Discrimination in Employment Act ("ADEA") prohibits employers

---

[4] As noted above, Goodwill's motion to dismiss the amended complaint is virtually identical to its motion to dismiss the original complaint, even though "[a]n amended complaint supersedes an original complaint." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 (11th Cir. 1999) (citation omitted).

[5] Giles states he can produce evidence to support that a white female supervisor terminated his employment, (doc. 25 at 2), but that is not a burden he shoulders at this stage of the litigation.

[6] Notably, at the pleading stage, Giles is not required to meet the evidentiary standard required to prevail at summary judgment. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 999 (2002) ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss."); *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (Title VII complaint not required to make out

from firing employees who are forty years or older because of their age. 29 U.S.C. § 623(a)(1); *Sims v. MVM, Inc.,* 704 F.3d 1327, 1331–32 (11th Cir. 2013).  Similarly, Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a).  To survive a motion to dismiss, an employment plaintiff proceeding under any theory who alleges disparate treatment "must provide 'enough factual matter (taken as true) to suggest' intentional . . . discrimination" by the defendant in question.  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

While the complaint could certainly benefit from more detail, taking all inferences favorably to Giles, Giles alleges he was treated worse than a comparator young white employee, Holmes, who committed multiple infractions without being disciplined, while Giles was fired. Contrary to Goodwill's argument, this alleges a "sufficiently severe and pervasive" action.  To qualify as disparate treatment, an adverse employment action must "impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).  Giles is complaining about his firing, which is unquestionably an adverse employment action.  Furthermore, it is immaterial that Giles "was hired when he was in a protected class," which Goodwill argues supports dismissal, (doc. 23 at 3). Goodwill cites no authority that would support this, and it defies common sense that an employer

---

*McDonnell Douglas* prima facie case); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270–71 (11th Cir. 2004) ("McDonnell Douglas [is] an *evidentiary* rather than a *pleading* standard . . . pleading a McDonnell Douglas prima facie case [is] not necessary to survive a motion to dismiss") (emphasis in original).

could insulate itself from a charge of discriminatory firing simply because it hired the employee in the first place.

However, Giles' claims of sex discrimination lack any factual support in the amended complaint.  The only relevant facts in Giles' sex discrimination count are that Preston "constantly sid[ed] with female employees and third-party individuals who worked with Goodwill," (doc. 21 at ¶ 41), prohibited Giles from "voic[ing] his opinion as opposed to females and . . . made it clear in any dispute with females Giles was wrong*,"* (*id.* at ¶ 42), and gave "Giles a negative evaluation that [she] later changed," (*id.* at ¶ 43).  Although the amended complaint indicates "harassing and unfair treatment" after Ford became Giles' supervisor, (*id.* at ¶ 44), it never connects this to Giles' sex in any way.  Nothing Giles alleges Preston did—"siding with female employees" in undescribed incidents and issuing later-retracted discipline—rises to the level of an actionable adverse employment action.  Nor does Giles' allegation he never witnessed Ford behave in a derogatory manner towards women support that Ford's actions towards him had anything to do with his sex.  Although Giles' response to the motion to dismiss states the amended complaint "clearly outlines specific incidents of . . . gender . . . discrimination including Plaintiff's termination," (doc. 25 at 2), he does not actually point to any specifics in the amended complaint that would bear this out.  Instead, Giles' only comparator for his termination is Holmes, who is the same sex as Giles and thus within his protected class for sex discrimination purposes.[7]  *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1221 (11th Cir. 2019).  Accordingly, Giles' sex discrimination claim is due to be dismissed.  To the extent he wishes to pursue it further, Giles

---

[7] Arguably, Giles points to Gates as a comparator, but she was fired (for unspecified reasons) and thus apparently treated no worse than Giles.

may move for leave to amend his complaint to provide factual support for his sex discrimination claim.

### IV. Conclusion

For the reasons stated above, Goodwill's motion to dismiss, (doc. 23), is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the motion is **GRANTED** as to Giles' sex discrimination claim, and **DENIED** as to all other relief.  Giles may move for leave to amend his complaint by **February 23, 2021**.  If he does not, Goodwill's answer to the first amended complaint is due by **March 2, 2021**.

DONE this 9th day of February, 2021.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE